IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARLOS A. NEGRON                                *
                                                     *
          v.                                    *       Civil Case No. WDQ-13-1469
                                                     *
COMMISSIONER, SOCIAL SECURITY      *
                                                     *
                                         *************

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. ECF Nos. 14, 16. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Mr. Negron's motion be denied.

Mr. Negron applied for Supplemental Security Income on November 24, 2009, alleging a disability onset date of April 1, 2008. (Tr. 155-58). His claim was denied initially on May 13, 2010, and on reconsideration on November 19, 2010. (Tr. 61-64, 68-69). An Administrative Law Judge ("ALJ") held a hearing on March 28, 2012, (Tr. 30-56), and subsequently denied benefits to Mr. Negron in a written opinion, (Tr. 8-29). The Appeals Council declined review, (Tr. 1-4), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Mr. Negron suffered from the severe impairments of "Attention Deficit Hyperactivity Disorder, Mood Disorder, Intellectually Limited and Alcohol Use." (Tr.

13). However, the ALJ determined that Mr. Negron retained the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember and carry out simple instructions but would be unable to perform work requiring abstract thought or planning, is limited to simple, routine tasks performed in a work environment free of fast paced production requirements, with no independent decision making required and no changes to the work setting. He can have only occasional interaction with the public, supervisors and co-workers.

(Tr. 16). After considering testimony from a vocational expert ("VE"), the ALJ determined that Mr. Negron could perform work existing in significant numbers in the national economy, and that he was not therefore disabled. (Tr. 24-25).

Mr. Negron disagrees. He asserts several arguments in support of his appeal: (1) that the ALJ failed to give controlling weight to the opinion of his treating psychiatrist, Dr. Helen Witte; (2) that the ALJ lacked substantial evidence to reject the IQ scores assigned by Dr. Ansel; and (3) that the ALJ should have found Mr. Negron to meet various Listings. Each argument lacks merit.

Initially, Mr. Negron argues that the ALJ erred by assigning too little weight to the opinions of his treating psychiatrist, Dr. Helen Witte. Pl. Mot. 28-32. Initially, it is worth noting that Mr. Negron's file contains substantial evidence that could be marshaled either to support or to undermine a finding of disability. This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ's decision meets that standard.

A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20

C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)). As the ALJ noted, Dr. Witte had only met with Mr. Negron four times before authoring the opinion, and noted both that Mr. Negron's description of his symptoms appeared to change in unusual ways and that his answers during at least one examination may have been guided by his acquaintance who was present during the appointment. (Tr. 21, 23). She specifically expressed some uncertainty about his diagnosis, and appears to have been pressured to submit an opinion for the purpose of the disability application before having sufficient information. (Tr. 344) ("Priest brought up importance of legal paperwork beign [sic] completed this week, even though this writer has only met twice with pt."); (Tr. 345) (Social worker indicated that Mr. Negron "[r]eports his hearing is on 10/24/11 and wants to see the psychiatrist for psy eval before that."). Moreover, as the ALJ indicated, Dr. Witte's own treatment notes indicated higher levels of functioning than indicated in her Medical Assessment Report. *Compare* (Tr. 341-343) (noting sleep disturbance improving with medication and organized, coherent and logical thought process) *with* (Tr. 355-57) (Medical Assessment Report suggesting an inability to work due to likely absenteeism without further explanation). The ALJ appropriately considered that discrepancy between the treatment notes and Dr. Witte's opinions. *See Forsyth v. Astrue*, No. CBD-09-2776, 2011 WL 691581, at *4-6 (D. Md. Feb. 18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the treating physicians' conclusions were inconsistent with their own medical records); *Cramer v. Astrue*, No. 9:10–1872–SB–BM, 2011 WL 4055406, at *9 (D.S.C. Sept. 12, 2011) (upholding assignment of less than controlling weight to opinions "that were based in large part on the Plaintiff's self-reported symptoms rather than clinical evidence and that were not consistent with the doctor's own treatment notes"); *see generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant

evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Moreover, as the ALJ noted, she assigned "little weight," not "no weight," to Dr. Witte's opinion, and incorporated limitations in the areas noted by Dr. Witte into the RFC assessment she assigned, specifically in the areas involving changes in the work setting and contact with the public, supervisors, and co-workers. (Tr. 23). In light of the substantial evidence undermining the allegations in Dr. Witte's opinion forms, the weight that was afforded to the specific concerns cited by Dr. Witte, and the fact that this Court is not to reweigh the evidence considered by the ALJ, remand is unwarranted.

Mr. Negron also unsuccessfully contends that the ALJ erred in rejecting the results of the IQ test which was propounded by Dr. Edward Ansel. Pl. Mot. 32-35. An ALJ is permitted to discredit an IQ score where the evidence suggests its invalidity, even where it is the only score in the record. *See Hancock v. Astrue*, 667 F.3d 470, 474-75 (4th Cir. 2012). In determining that Dr. Ansel's score was entitled to little weight, the ALJ noted (1) the similar results on a prior test which had been attributed to "an overtly poor effort and exaggerated . . . cognitive shortages;" (2) the discrepancy between the IQ scores and Mr. Negron's activities of daily living; (3) the fact that Dr. Ansel did not have the benefit of record evidence demonstrating a record of Mr. Negron's exaggerating his limitations; and (4) the apparent misrepresentations in the information Mr. Negron provided to Dr. Ansel about his educational history. (Tr. 15-16). In light of that substantial evidence, which is supported by the record, the ALJ therefore appropriately discounted the IQ score obtained by Dr. Ansel.[1]

Finally, Mr. Negron contends that the ALJ should have found him to meet or equal

---

[1] Mr. Negron contends that Dr. Ansel's results were supported by earlier doctors' opinions finding him to be less than competent to stand trial in a criminal case. Pl. Mot. 34-35. However, those reports specifically do "not suggest that he falls in the range of mental retardation," and do not definitively conclude that he is incompetent to stand trial. (Tr. 237). In fact, the evaluations completed by Dr. Tolan suggested that Mr. Negron was "malingering a combination of cognitive limitations and psychiatric symptoms in order to avoid courtroom proceedings." (Tr. 241).

4

Medical Listings 12.02 (Organic Mental Disorders) or 12.05 (Intellectual Disability). Pl. Mot. 35-37. A claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). The ALJ expressly considered both of the Listings cited by Mr. Negron, and determined that they were not met or equaled.

Listing 12.02 requires, among other criteria, that a claimant's mental impairment result in a least two of the following: "[m]arked restrictions of activities of daily living; or [m]arked difficulties in maintaining social functioning; or [m]arked difficulties in maintaining concentration, persistence, or pace; or [r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02B. The ALJ found that Mr. Negron had only mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and one to two episodes of decompensation of extended duration. (Tr. 14). Substantial evidence supports the ALJ's findings, specifically the mental RFC assessments by the state agency physicians, (Tr. 289) (finding mild-to-moderate limitations in the relevant areas and "the capacity to perform work-related tasks from a mental health perspective"), and the observations and findings of three consultative examiners, Drs. Budney, Karpers and Langlieb, two of whom expressed serious concerns about the credibility of Mr. Negron's symptoms and the third who suggested "rule out malingering." (Tr. 23, 265-69, 291-96, 310-12). The only opinion to support a finding of marked limitations in any of the required areas was that of Dr. Witte, which was appropriately discounted by the ALJ for the reasons set forth above. Accordingly, the ALJ's conclusion that Listing 12.02 was not met or equaled was supported by substantial evidence.

The ALJ's conclusion regarding Listing 12.05 was equally well-supported. Each subsection of the Listing cited by Mr. Negron requires evidence of a valid IQ score in a

particular range. As discussed above, the ALJ provided substantial evidence for his rejection of the IQ score determined by Dr. Ansel, and the only other IQ test result in the record was facially invalid in the opinion of the testing physician. Accordingly, Mr. Negron did not meet his burden to demonstrate that Listing 12.05 was met or equaled.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 16); and

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 14) and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated: February 25, 2014 　　　　　/s/　　　　　　　　　
Stephanie A. Gallagher
United States Magistrate Judge